UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Chapter 7 |
| OPK BIOTECH, LLC, | ) | 14-bk-11870-JNF |
| Debtor. | ) | |
| | ) | |

MOTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM
FOR USE AND OCCUPANCY AND FOR ORDER DIRECTING PAYMENT THEREOF

Eleven Hurley Street Associates ("EHSA") hereby requests entry of an order allowing its administrative claim on account of the use and occupancy of its property from the petition date and directing the trustee to pay the allowed amount of EHSA's administrative claim when funds become available to do so. Given the uncertainty attendant to the timing and result of a sale of the estate's assets, EHSA understands that ultimate determination of this motion will have to await the outcome of the liquidation of the assets housed in EHSA's property. At that time, EHSA will supply a full accounting of its administrative claim supported by affidavits and invoices through the date that the estate vacates EHSA's premises.

From the petition date to the date of this motion, the accrued amount of EHSA's administrative claim, calculated in accordance with EHSA's prepetition lease to the debtor, is $70,951.44. In addition to the use and occupancy charges calculated in accordance with the lease, EHSA has incurred an additional $3,316.53 of labor and security expenses which were the actual and necessary costs of preserving the estate's assets.[1]

In support of this motion, EHSA states as follows:

---

[1] These figures are based upon currently available information and do not include amounts for which invoices have not been produced or processed before June 18, 2014. EHSA reserves the right to supplement this figures in connection with the final calculation of its administrative claim.

1

*Jurisdiction and Basis for Relief*

1.      This Court has jurisdiction to hear and determine this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested by this motion are 11 U.S.C. §§ 105, 503 and 507.


*Background*

3.      EHSA is a Massachusetts general partnership and is the owner of the premises located at 11 Hurley Street, Cambridge, Massachusetts (the "11 Hurley").

4.      11 Hurley was leased to OPK Biotech, LLC (the "Debtor") pursuant to that certain Commercial Lease dated August 29, 1994 as amended and extended from time to time (the "11 Hurley Lease").[2] A true and accurate copy of the 11 Hurley Lease is attached as Exhibit A.

5.      Pursuant to the 11 Hurley Lease, EHSA leased approximately 23,850 square feet of building space and associated parking and exterior areas to the Debtor. The most recent extension of the 11 Hurley Lease extended the lease for the five year period between January 1, 2013 and December 31, 2017.

6.      The 11 Hurley Lease was an absolute net lease presently calling for annual rent of $352,409.76 plus taxes, utilities, insurance, repair and maintenance costs. The base rent was

---

[2] 11 Hurley is adjacent to manufacturing space separately leased to the Debtor by EHSA's affiliate Tarvis Realty, LLC ("Tarvis"). A separate motion by Tarvis for allowance of an administrative claim has been filed contemporaneously with this motion.

payable in equal monthly installments due in advance on the first of each month. Beginning on

January 1, 2013, the monthly base rent payment due from the Debtor to Tarvis was $29,367.48.

7.      Due to the Debtor's failure to remain current with respect to its base rent

payments under the 11 Hurley Lease, EHSA obtained a judgment for possession of the 11 Hurley

from the Cambridge District Court in the matter of *Eleven Hurley Street Associates v. OPK*

*Biotech, LLC*, 1452SU000139 on March 21, 2014. (Exhibit B).

8.      The Cambridge District Court issued an execution for possession of 11 Hurley in

accordance with the judgment for possession on April 1, 2014. (Exhibit C).

9.      On April 25, 2014 (the "Petition Date") an involuntary petition for relief under

chapter 7 was filed against the Debtor. On May 20, 2014 the Court entered an order for relief

under chapter 7 against the Debtor and Harold B. Murphy (the "Trustee") was appointed trustee

of the Debtor's estate.

10.     As of the Petition Date the Debtor was in arrears in rent due to 11 Hurley in the

amount of $24,472.90 (pro-rated for the month of April 2014). Upon information and belief the

Debtor's operations had completely ceased before the Petition Date. The Debtor began laying off

employees on March 7, 2014 and layoffs continued through the Petition Date. Eventually, the

employees' point of contact with the Debtor's principal became nonresponsive to employees'

inquiries and the last of the Debtor's employees were essentially forced to lay themselves off on

April 25, 2014. Notwithstanding the Debtor's cessation of operations, the Debtor apparently took

no action to vacate the 11 Hurley.

11.     11 Hurley consists of office space and a small laboratory. From the Petition Date

to the date of this motion the laboratory space within 11 Hurley has contained a substantial

amount of hazardous and toxic chemicals. The removal and storage of these materials may only

3

be carried out by licensed personnel. EHSA has obtained an estimate of $55,000 for the safe

removal of the chemicals and related materials within the laboratory space.

12.    In addition to the hazardous raw material within the laboratory space, 11 Hurley

contains a fully equipped office space. This space includes approximately fifty work stations

equipped with desks, chairs and computes, over 100 file cabinets, and a compliment of other

miscellaneous office furniture. The office space also includes a server center and tape drive

backup library, seventy five phones and various other electronics such as a projector and routers.

In addition to these assets, the office contains miscellaneous files, books and office materials.

EHSA has received an estimate for removing the personal property from the office space in the

amount of $81,500 exclusive of the cost of disconnecting the estate's IT systems.

13.    Through June 18, 2014, EHSA has paid postpetition utility bills of $ $1,344.61,

real estate taxes of $15,421.86 and insurance premiums of $2,109.24, all of which were the

responsibility of the Debtor, as a component of rent, under the 11 Hurley Lease.

14.    In addition to the cash expenditures made by EHSA, EHSA has not been

compensated for the continued use and occupancy of 11 Hurley since the Petition Date. The

Trustee has taken the position, in his conversations with EHSA's counsel, that the 11 Hurley

Lease was terminated prepetition by virtue of the judgment for possession entered by the

Cambridge District Court and EHSA does not dispute this position. However, based upon the

fact that the 11 Hurley Lease was extended by the Debtor in 2012 in an arm's length transaction

between sophisticated parties, EHSA maintains that the contractual lease payments constitute the

best measure of the value of the estate's continued use and occupancy of 11 Hurley since the

Petition Date. Through June 18, 2014 value of the estate's use and occupancy of 11 Hurley, as

calculated in accordance with the 11 Hurley Lease, is $70,951.44 consisting of $52,137.54 in

4

base rent (pro-rated for April and June) and $18,875.71 in taxes, insurance and utilities payable by the occupant of 11 Hurley under the 11 Hurley Lease.

15.    In addition use and occupancy costs calculated in accordance with the 11 Hurley Lease, EHSA has incurred $700 in charges related to fire and security alarm service at 11 Hurley and $2,615.63 in labor costs necessary to safeguard and maintain the hazardous materials in the laboratory space and the IT systems within the office space. These services are being rendered by three former employees of the Debtor.

16.    EHSA has informed the Trustee of its intention to relet 11 Hurley, but it cannot do so as long as the estate's assets occupy the entirety of the premises. EHSA is aware of the Trustee's apparent intention to liquidate the estate's assets. However, given the estate's lack of funds and expense associated with removing the estate's property from 11 Hurley, EHSA is left to assume that the Trustee intends to liquidate the estate's assets in place. When an eventual liquidation of the estate's assets may take place is unknown at this point. EHSA is left in the position of funding the estate's continued occupancy of 11 Hurley, without any certain date for reimbursement of administrative expenses, while simultaneously being prevented from reletting the premises covered by the previously terminated 11 Hurley Lease.

*Argument*

17.    In this involuntary proceeding the estate was created on the Petition Date. See 11 U.S.C. § 541(a)(stating, "The commencement of a case under section…303 of this title creates an estate.")

18.    11 U.S.C. § 503(b) provides in relevant part, "After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this

title, including…(1)(A) the actual, necessary costs and expenses of preserving the estate." The

First Circuit has held that claims satisfy the requirements of § 503(b)(1)(A) if: "(1) the right to

payment arose from a postpetition transaction with the debtor estate, rather than from a

prepetition transaction with the debtor, and (2) the consideration supporting the right to payment

was beneficial to the estate of the debtor." See Woburn Assoc. v. Kahn (In re Hemingway

Trans., Inc.), 954 F.2d 1, 4 (1st Cir. 1992). The costs and expenses attendant to the estate's

continued occupancy of the Plant, since the Petition Date, are actual and necessary costs of

preserving the estate's property stored within the Plant.  See Id. at 5 (stating, "Preservation of the

estate includes protection of the assets of the estate, as well as postpetition operation of the

business of the debtor."); In re Pyxsys Corp., 288 B.R. 309, 317-18 (Bankr. D. Mass. 2003).

      19.     In re Pyxsys Corp., the court determined that the post-lease rejection use and

occupancy claim of an involuntary debtor's landlord "easily satisfied" the requirement that the

claim arise from a transaction with the estate. Id. Further, the court determined that the storage of

the estate's personal property satisfied any interpretation of the benefit to the estate requirement

of the Hemingway Transport test. 288 B.R. at 318 (stating, "Whether viewed objectively or

subjectively, the storage of assets at the Property directly benefitted the estate.").

      20.     In light of the foregoing facts and authorities, the estate has been incurring an

administrative claim to EHSA since the Petition Date.[3] What remains then is the calculation of

the amount of that claim. It is well established in this district that the fair value of a use and

occupancy claim should be determined in accordance with the terms of the lease which had been

applicable to the premises absent evidence that the lease terms were unreasonable. See In re

---

[3] Arguably, the charges accrued from the Petition Date to May 20, 2014 could be considered gap claims allowable pursuant to 11 U.S.C. § 502(f) and therefore not § 503(b)(1)(A) administrative claims. To the extent that the claims accrued during that period are not "allowed under section 502(f)" then they would not be excluded from allowance under § 503(b).

Pyxsys, 288 B.R. at 318; In re Rare Coin Galleries of America, 72 B.R. 415, 417 (Bankr. D.

Mass. 1987).

21.    The 11 Hurley Lease, as amended, provides in part

3.    RENT

A.    The rent payable to LESSOR during the initial term shall be as
follows:

| Lease Year | P.S.F. | Annually | Monthly |
|---|---|---|---|
| 2007 | $11.00 | $262,350.00 | $21,862.50 |

...

B.    The annual rent payable to LESSOR during each five (5) year
extension period shall be the annual rent payable during the lease year
immediately preceding the date upon which such extension period commences
(the "Extension Period Commencement Date") increased by an amount which is
the product of (a) a percentage equal to the greater of the percentage increase in
the Price Index (as defined below) over the fiver (5) lease years immediately
preceding the Extension Period Commencement Date and 15.9%, and (b) the
annual rent payable during the lease year immediately preceding the Extension
Period Commencement Date...

C.    The Premises are leased to the LESSEE on an absolute net basis.
The term absolute net shall mean that the LESSEE shall, in addition to the
monthly rental payments to the LESSOR, be responsible for the payment of real
estate taxes, insurance premiums, utilities and normal maintenance to the building
operating systems and equipment including, but not limited to, the heating plan
and air conditioning systems.

22.    In light of the 11 Hurley Lease's definition of rent, EHSA's administrative claim

not only includes the base rental amount of $29,367.48 per month, but also the actual costs

incurred by EHSA, since the Petition Date, for taxes, insurance and utilities and all other items

included within the description of rent in the 11 Hurley Lease. In re Xonics, Inc., 65 B.R. 69, 75

(Bankr. N.D. Ill. 1986)(including within an administrative use and occupancy claim the debtor's

share of real estate taxes as provided within the prior lease between the debtor and its landlord).

7

23.     EHSA understands that the estate is presently without funds to pay the continually accruing administrative claim due to it and that the total amount of its administrative claim cannot be calculated until the Trustee vacates 11 Hurley. Further, the extent of the benefit to the estate will only be established with certainty upon the disposition of those estate assets contained within 11 Hurley. See In re Pyxsys, 288 B.R. at 318.

24.     In light of these issues this motion is submitted with the understanding that final determination and allowance of EHSA's administrative claim will need to occur following the disposition of assets within the 11 Hurley. Notwithstanding, EHSA believes that the filing of this motion is appropriate to apprise the Court, the Trustee and parties in interest of the accrual of its administrative claim so that informed decisions regarding the administration of the estate can be made.

*Conclusion*

In light of the foregoing, EHSA requests approval of its administrative claim for use and occupancy of 11 Hurley from the Petition Date through the date that 11 Hurley is vacated by the Trustee in an amount to be determined upon the submission of invoices and affidavits itemizing EHSA's claim.

[SIGNATURE ON NEXT PAGE]

ELEVEN HURLEY STREET ASSOCIATES

By its attorneys,

/s/ Leonard A. Frisoli
Leonard A. Frisoli
Frisoli Associates, P.C.
Bulfinch Square
43 Thorndike Street
Cambridge, MA 02141
Tel. (617) 494-0200
Fax. (617) 494-9068
LAF@FrisoliLaw.com

-and-

Steven J. Boyajian (BBO 664800)
Robinson & Cole LLP
One Financial Plaza, Suite 1430
Providence, RI 02903
Tel. (401) 709-3300
Fax. (401) 709-3399
sboyajian@rc.com

# EXHIBIT

# A

EXHIBIT B

COMMERCIAL LEASE

| | |
|---|---|
| PREMISES | 11 Hurley Street<br>Cambridge, Massachusetts |
| LESSOR | Eleven Hurley Street Associates |
| LESSEE | Biopure Corporation |
| TERM | 7 years commencing on March 1, 1995<br>and expiring on February 28, 2002. |

AUGUST _____, 1994

## TABLE OF CONTENTS

|  |  | PAGE |
|---|---|---|
| 1. | PARTIES AND PREMISES | 1 |
| 2. | TERM | 1 |
| 3. | RENT | 1 |
| 4. | CONSTRUCTION | 3 |
| 5. | UTILITIES | 6 |
| 6. | USE OF LEASED PREMISES | 7 |
| 7. | COMPLIANCE WITH LAWS | 7 |
| 8. | FIRE INSURANCE | 7 |
| 9. | MAINTENANCE OF PREMISES | 8 |
| 10. | ALTERATIONS ADDITIONS | 8 |
| 11. | ASSIGNMENT SUBLEASING | 9 |
| 12. | SUBORDINATION AND NON-DISTURBANCE AND ATTORNMENT | 10 |
| 13. | LESSOR'S ACCESS | 11 |
| 14. | PROPERTY LOSS DAMAGE REIMBURSEMENT | 11 |
| 15. | NON-LIABILITY OF LESSOR | 15 |
| 16. | LESSEE'S LIABILITY INSURANCE | 15 |
| 17. | CASUALTY INSURANCE | 16 |
| 18. | EMINENT DOMAIN | 19 |
| 19. | DEFAULT AND BANKRUPTCY | 20 |
| 20. | NOTICE | 22 |
| 21. | SURRENDER | 22 |
| 22. | LESSOR'S REPRESENTATIONS AND WARRANTIES | 23 |
| 23. | BROKERAGE | 25 |
| 24. | SELF-HELP | 25 |
| 25. | NOTICE OF LEASE | 26 |
| 26. | ENTIRE AGREEMENT | 26 |

COMMERCIAL LEASE

1.   PARTIES AND        Eleven Hurley Street Associates,
     PREMISES
                        a Massachusetts general partnership having a

                        principal place of business at 68 Harrison

                        Avenue, Boston, Massachusetts, as LESSOR, which

                        expression shall include its successors and

                        assigns where the context so admits, does hereby

                        lease to Biopure Corporation, a Delaware

                        corporation having a usual place of business at

                        68 Harrison Avenue, Boston, Massachusetts, as

                        LESSEE, which expression shall include its

                        successors and assigns where the context so

                        admits, and the LESSEE hereby leases the

                        following described premises: the land described

                        in Exhibit A attached hereto, together with the

                        building (the "Building") to contain

                        approximately 23,850 square feet of gross floor

                        area and parking area to be constructed thereon

                        located at and known as 11 Hurley Street,

                        Cambridge, Middlesex County, Massachusetts,

                        consisting of approximately 22,000 square feet

                        of land (the "Premises").


2.   TERM               The term of this Lease shall be for eighty-four

                        (84) months following the Rent Commencement

                        Date, as the same is defined in Section 4

                        (plus the partial month, if any, immediately

                        following said date.  The end of term is

                        hereinafter referred to as the Termination Date.

                        The LESSEE shall have the options to extend the

                        term of this Lease for two (2) periods of five

                        years each.


3.   RENT               A.  The Premises are leased to the LESSEE on

                        an absolute net basis.  The term absolute net

                        shall mean that the LESSEE shall, in addition

to the monthly rental payments to the LESSOR, be responsible for payment of real estate taxes, insurance premiums, utilities and normal maintenance to the building operating systems and equipment including, but not limited to, the heating plant and air conditioning systems.

The LESSEE will pay to the LESSOR, in advance in equal monthly installments, rental payments at the annual rate of $9.25 per square foot of gross floor area of the Building or $220,612.50, whichever is lesser, provided, however, that the base rent shall not commence to accrue until the Rent Commencement Date as defined in Section 4.  In the event the Rent Commencement Date is not on the first day of the month, then the rent for that month will be pro-rated.

In the event the rent is not paid by the 10th day of the month for which it is due, LESSEE agrees to pay a penalty charge of three (3%) percent of the rent due.  This shall also apply for any dishonored check which results in the failure of LESSOR to receive rent by the 10th day of the month for which rent is due.  In the event that LESSEE makes three (3) or more consecutive late payments of rent during the term, LESSOR may deem such action a default under Paragraph 19 hereof.  If, because of LESSEE'S default under any covenant of this lease, including the non-payment of rent, LESSOR institutes an action for summary proceedings against Lessee and obtains a judgment against LESSEE, LESSEE agrees to reimburse the LESSOR for the expense of reasonable attorney's fees plus

2

costs and disbursements and the same shall be included in such judgment as additional rent.

B.   The LESSOR grants to the LESSEE the option to extend the term of this Lease for two (2) periods of five years each.  Said option may be exercised by the LESSEE by giving written notice thereof to the LESSOR six (6) months prior to the expiration of the original and/or the extended term.  The annual rent during the extended term(s) will be the prior term's annual rent increased by ninety percent (90%) of the percentage of increase in the cumulative average consumer price index for Boston, Mass.-All Items (1982-84=100) as published by the United States Department of Labor, Bureau of Labor Statistics during the prior term.
In the event this price index is not then published, then the parties shall agree to the use of a substitute index that reasonably reflects price increases for the Boston area. All other lease terms and conditions will remain in full force and effect during the extension term(s).

4.   CONSTRUCTION   The Premises shall be improved by the Lessor in accordance with the Approved Construction Plans set forth on Exhibit B.  All costs for architectural   services   related   to   the preparation of these plans, the inspections of the work to be performed pursuant thereto (the "Work") and the certifications thereof shall be part of all of the hard and soft costs related to acquisition of the Premises by the Lessor and the improvement thereof.  Hard and

3

soft costs shall include, without limiting the generality of the foregoing, land costs, professional fees, closing costs, testings, interest charges, real estate taxes, permits, insurance and construction. Any expenditures for such costs in excess of first mortgage proceeds plus four hundred and fifty thousand dollars ($450,000.00) shall be the sole responsibility of the Lessee.

The parties shall use good faith and best efforts to meet the following schedule for construction and occupancy:

| July 30 | Contract Negotiation and Award |
| August 15 | Commencement of Construction |
| March 1, 1995 | Occupancy (the "Estimated Rent Commencement Date"). |

Subject to the remainder of this Section, Lessor agrees to substantially complete the Work on the Premises, as determined by Sutphin Associates Architects, by the Estimated Rent Commencement Date, in accordance with the Approved Construction Plans. Lessor shall not be required to install any improvements which are not in conformity with or which are not described or shown on the Approved Construction Plans. In case of delays due to governmental regulation, unusual scarcity of or inability to obtain labor or materials, labor, strikes, lockouts, shutdowns, or inability to obtain materials, casualty or other causes reasonably beyond Landlords control, the aforesaid Estimated Rent Commencement Date shall be extended for the period or periods of such delays. The Premises shall be deemed ready for occupancy

4

and substantially completed on the date on which the work described in the Approved Construction Plans, together with common facilities for access and service to the Premises, has been certified by the Lessor's architects, Sutphin Associates, to be complete and ready for occupancy except for items of work and adjustment of equipment and fixtures which can be completed after occupancy has been taken without causing substantial interference with Lessee's use of the Premises (i.e. so-called "punch list" items) (the "Rent Commencement Date").    Lessee may install furnishings and equipment within the Premises after receipt of the notice of the same being ready for occupancy.  Lessor shall complete as soon as conditions practically permit all punch list items in such manner as will not increase the cost of completion. Lessor shall permit Lessee access for installing furnishings in portions of the Premises when it can be done without material interference with remaining work.

Lessee agrees that no delay by it, or anyone employed by it in performing work to prepare the Premises for occupancy,    shall delay commencement of the term or the obligation to pay rent, regardless of the reason for such delay or whether or not it is within the control of Lessee or any such employee.

The Lessee shall be responsible for that portion of the hard and soft costs for the Work that exceeds first mortgage proceeds plus four hundred and fifty thousand ($450,000.00) dollars and the same shall be due and payable,

5

pari passu, as the Landlord is obligated to make payments to the general contractor. If any change orders to the Approved Construction Plans shall be made at the request of and/or the approval of the Lessee which result in an increase in the cost of the work, the cost thereof shall be borne by the Lessee. If such a change order shall extend the time within which the Architect has or would have determined the Premises to be ready for occupancy, then the Lessee shall be responsible for the payment of rent as of the date that the Premises could have been occupied but for the execution of a change order(s). All construction work required or permitted by this Lease shall be done in a good workmanlike manner and in compliance with all applicable laws and all lawful ordinances, regulations and orders of governmental authority and insurers of the Premises.

5.   UTILITIES    The LESSOR shall provide all equipment and utilities, including electricity, heating and plumbing, smoke detectors and fire alarms as required by law, water (general and sprinkler use) and sewer; all subject to interruption due to any accident, to the making of repairs, alterations or improvements, to labor difficulties, to trouble in obtaining fuel, electricity, service or supplies from the sources from which they are usually obtained for the Premises, or to any cause beyond the LESSOR'S control. The LESSEE shall be solely responsible for the payment of any and all charges and expenses related to the provision of the foregoing services,

6

however, any such charges and expenses billed directly to the LESSOR shall be forwarded immediately to the LESSEE for payment so as to avoid interruption of service and/or penalties.

6.  USE OF LEASED PREMISES

The LESSEE shall use the Premises only for the purposes of general office and researching, developing, processing and manufacturing bio-medical products and related uses.

7.  COMPLIANCE WITH LAWS

The LESSEE acknowledges that no trade or occupation shall be conducted in the Premises or use made thereof which will be unlawful, improper, noisy or offensive, or contrary to any law or any municipal by-law or ordinance in force in the city or town in which the premises are situated.

8.  FIRE INSURANCE

The LESSEE shall not permit any use of the Premises which will make voidable any insurance on the Premises or on the contents of the Building or which shall be contrary to any law or regulation from time to time established by the New England Fire Insurance Rating Association, or any similar body succeeding to its powers.  The payment of all premiums related to any coverage required under this lease shall be the sole responsibility of LESSEE.  Each policy shall name the LESSOR and the LESSEE as insured parties, as their interests may appear, and the holder(s) of any outstanding mortgage(s) as the mortgagee on said policy(ies).

7

9. **MAINTENANCE OF PREMISES**   The LESSEE agrees to maintain the interior of the Building (other than walls, foundations, roofs and other structural elements which are the Lessor's responsibility) in the same condition as they are at the commencement of the term or as they may be put in during the term of this Lease, reasonable wear and tear, damage by fire and other casualty only excepted, and, whenever necessary, to replace plate glass and other glass therein. Further, LESSEE shall be responsible for normal routine maintenance and repairs to the heating, air conditioning and ventilation systems in the interior of the Buildings, except when LESSEE is negligent in properly maintaining the building systems in which event the LESSEE shall repair or replace, if necessary, said heating, air conditioning or ventilation system. The LESSEE shall not permit the Premises to be overloaded, damaged, stripped, or defaced, nor suffer any waste. LESSEE shall obtain written consent of LESSOR before erecting any sign on the Premises. The LESSOR will not reasonably withhold consent to erect any sign which conforms with the Cambridge Zoning Ordinance and which does not diminish the structural integrity of the Building. The LESSEE shall be responsible for the removal of snow and ice from the sidewalks bordering upon the Premises.

10. **ALTERATIONS ADDITIONS**   The LESSEE may not make structural and non-structural alterations or additions to the

8

Premises without the prior written consent of the LESSOR, which consent shall not be unreasonably withheld or delayed. At lease termination, the LESSEE may remove all additions, equipment and/or fixtures that it installed, including, without limitation, all utility upgrades and pipes, ducts, wires and appurtenant facilities thereof, but in no case will their removal affect the structural integrity of the Building. All such allowed alterations shall be at LESSEE'S expense and shall be in quality at least equal to that of the Approved Construction. LESSEE shall not permit any mechanics' liens, or similar liens, to remain upon the Premises for labor and material furnished to LESSEE or claimed to have been furnished to LESSEE in connection with work of any character performed or claimed to have been performed at the direction of LESSEE and shall cause any such lien to be released of record forthwith without cost to LESSOR. Any structural alterations or additions made by the LESSEE shall become the property of the LESSOR at the termination of occupancy as provided herein. Anything to the contrary not withstanding, the LESSOR reserves the right to require the LESSEE to remove any or all LESSEE installed improvements which the LESSOR determines will inhibit the leasing of the Premises at the termination of this Lease.

11. ASSIGNMENT    The LESSEE shall not assign or sublet the
    SUBLEASING    whole or any part of the Premises without

9

LESSOR'S prior written consent, which consent shall not be unreasonably withheld or delayed. Notwithstanding such consent, LESSEE shall remain liable to LESSOR for the payment of all rent and for the full performance of the covenants and conditions of this Lease unless otherwise agreed to in writing by Lessor. Prior to requesting the approval of LESSOR to an assignment or subletting as hereinbefore provided, LESSEE shall, by notice as provided herein, advise the Lessor of all the terms, covenants and conditions of the LESSEE's proposed sublease or assignment.

12. SUBORDINATION AND NON-DISTURBANCE AND ATTORNMENT

LESSEE agrees at the request of LESSOR to subject and subordinate this Lease to any mortgage(s), or other instruments(s) in the nature of a mortgage, provided that the holder(s) of such mortgage(s) enters into a non-disturbance and attornment agreement with the LESSEE, binding upon the successors and assigns of the parties thereto, by the terms of which such holder(s) agrees (i) not to disturb the possession or other rights of the LESSEE under this Lease so long as LESSEE continues to  perform its obligations hereunder and (ii) in the event of acquisition of title by such holder(s) or any other person by or through foreclosure proceedings or otherwise, to accept the LESSEE as lessee of the Premises under the terms and conditions of this Lease and to perform the LESSOR'S obligations hereunder, and (iii) an agreement by the LESSEE to attorn to any such holder(s) or

10

successor(s).  The LESSOR represents and
warrants that the only mortgage on the
Premises is held by The First National Bank of
Boston and a Non-Disturbance and Attornment
Agreement by and between LESSEE and the First
National Bank of Boston shall be executed
within ten (10) business days hereof.

13.  LESSOR'S      The LESSOR or agents of the LESSOR
     ACCESS        may, at reasonable times, upon the giving of
                   two (2) business days written notice to
                   LESSEE, enter to view the Premises and may
                   remove placards and signs not approved and
                   affixed as herein provided, and make repairs
                   and alterations as LESSOR should elect to do
                   and may show the Premises to others, and at
                   any time within nine (9) months before the
                   expiration of the term may affix to any
                   suitable part of the Premises a notice for
                   letting or selling the Premises or property
                   of which the Premises are a part and keep the
                   same so affixed without hindrance or
                   molestation.  It is agreed in making any such
                   entry upon or inspection of the Premises, the
                   LESSOR and his agents shall adhere
                   to all security measures of the LESSEE
                   designed to protect and keep confidential all
                   proprietary rights and information of the
                   LESSEE.

14.  PROPERTY      (A)  Lessor or its agents shall not be liable
     LOSS DAMAGE   for any damage to property of LESSEE or
     REIMBURSEMENT others entrusted to the employees of the
                   Building, nor for the loss of or damage to
                   any property of LESSEE by theft or otherwise

11

unless caused by negligence or misconduct
attributable to LESSOR.  LESSOR or its agents
shall not be liable for any injury or damage
to persons or property resulting from fire,
explosion, falling plaster, steam, gas,
electricity, electrical disturbance, water,
rain or snow or leaks from any part of the
building or from the pipes, appliances or
plumbing works or from the roof, street or
subsurface or from any other place or by
dampness or by any other cause of whatsoever
nature, unless caused by or due to the
negligence or misconduct of LESSOR, its
agents, servants or employees or the LESSOR'S
failure to observe its obligations hereunder;
nor shall LESSOR or its agents be liable for
any such damage caused by operations in
construction of any private, public or
quasi-public work.  If at any time
any windows of the Premises are temporarily
(up to twenty-four hours) closed or darkened
incident to or for the purpose of repairs,
replacements, maintenance and/or cleaning in,
on, to or about the Building or any part or
parts thereof, LESSOR shall not be liable for
any damages LESSEE may sustain thereby and
LESSEE shall not be entitled to any
compensation therefor nor abatement of rent
nor shall the same release LESSEE from its
obligations hereunder nor constitute an
eviction.  LESSOR and LESSEE shall reimburse
and compensate each other as the case may be
for all reasonable expenditures made by or
damages or fines sustained by either party
due to the non-performance or non-compliance

12

with or breach or failure to observe any
term, covenant or conditions of this Lease
upon their respective part to be kept,
observed, performed or complied with.  Either
party shall give immediate notice to the
other after knowledge thereof in case of fire
or accident in the Premises or in the
Building or of defects therein or in any
fixtures or equipment of which they have
knowledge.

B.  LESSEE shall indemnify and save harmless
LESSOR against and from any and all claims by
and on behalf of any person or persons, firm
or firms, corporation or corporations arising
from the conduct or management of or from any
work or thing whatsoever done (other than by
LESSOR or its contractors or the agents or
employees of either) in and on the Premises
during the term of this lease and during the
period of time, if any, prior to the Rent
Commencement Date that LESSEE may have been
given access to the Premises for the purpose
of making installations, and will further
indemnify and save harmless LESSOR against
and from any and all claims arising from any
condition of the Premises due to or arising
from any act or omission or negligence of
LESSEE or any of its agents, contractors,
servants, employees, licensees or invitees,
and against and from all costs, expenses and
liabilities incurred in connection with any
such claim or claims or action or proceeding
brought thereon; and in case any action or
proceeding be brought against LESSOR by

13

reason of any such claim, LESSOR shall give
LESSEE prompt notice thereof and LESSEE, upon
notice from LESSOR, agrees that LESSEE, at
LESSEE'S expense, will resist or defend such
action or proceeding and will employ counsel
therefor reasonably satisfactory to LESSOR.
LESSEE'S liability under this Lease extends
to the acts and omissions of any subtenant,
and any agent, contractor, employee, invitee
and licensee of any subtenant.

C.   LESSOR shall indemnify and save harmless
LESSEE against and from any and all claims by
and on behalf of any persons or persons, firm
or firms, corporation or corporations arising
from the conduct or management of or from any
work or thing whatsoever done (other than by
LESSEE or its contractors or the agents or
employees of either) in and on the PREMISES
during the term of this Lease and during the
period of time, if any, prior to the Rent
Commencement Date that LESSOR may have been
given access to the Premises for the purpose
of making installations, and will further
indemnify and save harmless LESSEE against
and from any and all claims arising from any
condition of the Premises due to or arising
from any act or omission or negligence of
LESSOR or any of its agents, contractors,
servants, employees, licensees or invitees,
and against and from all costs, expenses and
liabilities incurred in connection with any
such claim or claims or action or proceeding
brought thereon; and in case any action or
proceeding be brought against LESSEE by

14

reason of any such claim, LESSOR upon notice from LESSEE, agrees that LESSOR, at LESSOR'S expense, will resist or defend such action or proceeding and will employ counsel therefor reasonably satisfactory to LESSEE.  LESSOR'S liability under this lease extends to the acts and omissions of any of its agents, contractors, employees and invitees.

15. NON-LIABILITY OF LESSOR
If LESSOR or a successor in interest is an individual (which term as used herein includes aggregates of individuals, such as joint ventures, general or limited partnerships or associations) such individual shall be under no personal liability with respect to any of the provisions of this Lease, it being the intention hereof that if the LESSOR hereto is in breach or default with respect to its obligations under this Lease, LESSEE shall look solely to the equity of such LESSOR in the land and building of which the Premises form a part of and the rent stream arising therefrom for the satisfaction of LESSEE'S remedies for the collection of a judgment requiring the payment of money by the LESSOR, and no other property or assets of LESSOR shall be subject to levy, execution or other enforcement procedure for the satisfaction of LESSEE'S remedies under or with respect to either this lease, the relationship of LESSOR or LESSEE hereunder or LESSEE'S use and occupancy of the Premises.

16. LESSEE'S LIABILITY
The LESSEE shall maintain with respect to the

15

| | |
|---|---|
| INSURANCE | Premises commercial general liability insurance with a general aggregate limit of not less than $1,000,000.00, with responsible companies qualified to do business in Massachusetts and in good standing therein insuring the LESSOR as well as LESSEE against injury to persons or damage to property. The LESSEE shall deposit with the LESSOR certificates for such insurance at or prior to the commencement of the term, and thereafter within thirty (30) days prior to the expiration of any such policies. All such insurance certificates shall provide that such policies shall not be cancelled or materially altered without at least thirty (30) days prior written notice to each insured named therein. |
| 17.  CASUALTY INSURANCE | A.  The LESSEE, at its expense, shall procure for the benefit of LESSOR and LESSEE, and shall maintain in full force and effect at all times during the term of this Lease, "all risks" property insurance in an amount not less than the full replacement value of the Building (to be determined annually by LESSEE and LESSOR) and having a deductible of not greater than $5,000 from a loss payable for a single casualty and containing a so-called "replacement costs coverage endorsement" and an "agreed amount endorsement." Upon the Rent Commencement Date, said insurance shall be in the minimum amount of $1,500,000.00. If the Building is damaged by fire or other casualty insured against under the policy, LESSEE and LESSOR shall fully cooperate with one another in processing any claims related thereto. |

16

B.  If during the term of this Lease the
Building is damaged or destroyed by fire or
other casualty insured against, and such
damage is not substantial, this Lease shall
remain in full force and effect and LESSEE
shall be responsible for effecting any
necessary repair or restoration of the
Building to the extent of available insurance
proceeds and shall be responsible for the
payment of any deductible related thereto.
All insurance proceeds shall be applied to
the payment of costs and expenses incurred in
effecting any such repair or restoration.

C.  If during the term of this Lease the
Building is substantially damaged or
destroyed by fire or other casualty insured
against, LESSEE may elect to terminate this
Lease by giving written notice thereof to
LESSOR within thirty (30) days of the date of
such fire or other casualty.  If LESSEE does
not elect to terminate this Lease, then this
Lease shall remain in full force and effect
and LESSOR shall, to the extent of available
insurance proceeds, promptly repair, restore
and replace the Building to the same
condition the Building was in immediately
prior to such fire or other casualty or such
other condition as LESSEE shall approve in
writing.

D.  If during the term of this Lease the
Building is partially or substantially
damaged or destroyed by casualty not insured
against, or if the available insurance

17

proceeds will not be sufficient to repair, restore and replace the Building to the same condition the Building was in immediately prior to such casualty, LESSEE may elect to terminate this Lease by giving written notice to LESSOR within thirty (30) days after making such determination.

If LESSEE does not elect to terminate this Lease, LESSEE shall at its sole cost and expense repair, restore and replace the Building to the same condition the Building was in immediately prior to such casualty.

E.  If the LESSOR is obligated to repair, restore and replace the Building pursuant to this Paragraph 17, and fails to complete such repair, restoration and replacement within ninety (90) days of the date of such damage, LESSEE shall have the right to terminate this Lease by giving written notice to LESSOR.

F.  If the Premises are rendered unsuitable for their intended use by reason of any damage or destruction, a just and proportionate abatement of the rent and other charges payable by LESSEE under this Lease shall be made until the Premises are fully repaired, restored and replaced.

G.  For the purposes of this Paragraph (17), "substantially damaged" or "substantial damage" means damage of such a character that the same cannot, in the ordinary course, reasonably expected to be repaired within thirty (30) days from the time the repair work would commence.

18

18.  EMINENT
     DOMAIN

A.  If during the term of this Lease the Premises are totally taken by condemnation, this Lease shall terminate on the date of the taking.

B.  If during the term of this Lease any portion of the Premises is taken by condemnation, LESSEE may elect to terminate this Lease by giving written notice to LESSOR within thirty (30) days after the nature and extent of the taking have been finally determined.  If LESSEE does not elect to terminate this Lease, this Lease shall remain in full force and effect and a just and proportionate abatement of the rent and other charges payable by LESSEE under this Lease shall be made.

C.  If there is a partial taking of the Premises and this Lease remains in full force and effect, LESSOR at its cost shall restore promptly what remains of the Building to a complete architectural unit as close as possible to the condition of the Building immediately prior to such taking to the extent permitted by the taking award less the reasonable expenses of LESSOR in connection with the collection of same and subject to then applicable legal requirements.

D.  If this Lease terminates as a result of a taking pursuant to either (A) or (B) above, LESSEE shall be entitled to receive any taking award attributable to LESSEE's equipment,

19

fixtures and relocation costs.  If this Lease
does not terminate as a result of a taking of
the Premises, the entire award (less any portion
attributable to LESSEE's equipment, fixtures and
relocation expenses) shall be paid to LESSOR and
shall be used to effect the repair, restoration
and replacement of the Premises.

19. DEFAULT AND    In the event that:
    BANKRUPTCY
(a)    the LESSEE shall default in the payment
       of any installment of rent or other sum
       herein specified and such default shall
       continue for ten (10) days after
       written notice thereof; or

(b)    The LESSEE shall default in the
       observance or performance of any other
       of the LESSEE'S covenants, agreements,
       or obligations hereunder and such
       default shall not be corrected within
       thirty (30) days after written notice
       thereof provided that if such default
       is not susceptible of being cured
       within such period of thirty (30) days,
       the LESSEE shall have such additional
       period of time to cure as may be
       reasonably required to effect such cure
       so long as the LESSEE seasonably
       commences the curative action and
       continually and diligently pursues the
       same; or

(c)    The LESSEE shall be declared bankrupt
       or insolvent according to law, or, if
       any assignment shall be made of
       LESSEE'S property for the benefit of

20

creditors; then the LESSOR shall have
the right thereafter, while such
default continues, to re-enter and take
complete possession of the leased
Premises; to declare the term of this
Lease ended; and to remove the LESSEE'S
effects, without prejudice to any
remedies which might be otherwise used
for arrears of rent or other reasonable
default. The LESSEE shall indemnify
the LESSOR against all loss of rent and
other reasonable payments which the
LESSOR may incur by reason of such
termination during the residue of the
term. If the LESSEE shall default,
after reasonable notice thereof, in the
observance or performance of any
conditions or covenants on LESSEE'S
part to be observed or performed under
or by virtue of any of the provisions
in any article of this Lease, the
LESSOR, without being under any
obligation to do so and without thereby
waiving such default, may remedy such
default for the account and at the
expense of the LESSEE. If the LESSOR
makes any reasonable and necessary
expenditures or incurs any reasonable
and necessary obligations for the
payment of money in connection
therewith, including but not limited
to, reasonable attorney's fees in
instituting, prosecuting or defending
any action or proceeding, such sums
paid or obligations insured, with

21

interest at the rate of ten (10) percent per annum and costs, shall be paid to the LESSOR by the LESSEE as additional rent.  The LESSOR specifically recognizes the obligation to minimize damages and will use commercially reasonable efforts to relet the Premises.

20.  NOTICE    Any notice from the LESSOR to the LESSEE relating to the leased Premises or to the occupancy thereof, shall be deemed duly served, if mailed to the LESSEE by registered or certified mail, return receipt requested, postage prepaid, or delivered by Constable or sent to the LESSEE by federal express or express mail at the following address:  Biopure Corporation, 11 Hurley Street, Cambridge, MA 02141, Att: Brian Lajoie.  Any notice from the LESSEE to the LESSOR relating to the leased Premises or to the occupancy thereof, shall be deemed duly served, if mailed to the LESSOR by registered or certified mail, return receipt requested, postage prepaid, or sent to LESSOR by federal express or express mail, addressed to the LESSOR at such address as the LESSOR may from time to time advise in writing.  All rent and notices shall be paid and sent to the LESSOR at 11 Hurley Street, Cambridge, Massachusetts 02141.

21.  SURRENDER   The LESSEE shall at the expiration or other termination of this Lease remove all LESSEE'S goods and effects from the Premises, (including without hereby limiting the

22

generality of the foregoing, all signs and
lettering affixed or painted by the LESSEE,
either inside or outside the Premises). LESSEE
shall deliver to the LESSOR the Premises and all
keys, locks thereto, and all structural
alterations and additions made to or upon the
Premises, in the same condition as they were at
the commencement of the term, or as they were
put in during the term hereof, reasonable wear
and tear and damage by fire or other casualty
only excepted. In the event of the LESSEE'S
failure to remove any of LESSEE'S property
from the Premises, LESSOR is hereby
authorized, without liability to LESSEE for
loss or damage thereto, and at the sole risk
of LESSEE, to remove and store any of the
property at LESSEE'S expense, or to retain
same under LESSOR'S control or to sell at
public or private sale, without notice any or
all of the property not so removed and to
apply the net proceeds of such sale to the
payment of any sum due hereunder, or to
destroy such property.

22. LESSOR'S REPRESENTA-TIONS AND WARRANTIES

The LESSOR warrants and covenants that the
Premises following the completion of the
construction of the Building, will comply with
all applicable zoning and building laws without
further variance or special permit or
non-conforming use exception, that the
Premises are not in a flood zone; and that
LESSOR has not unlawfully released or caused an
unlawful threat of release of any hazardous
materials or oils (as such terms are defined in
the Massachusetts Oil and Hazardous Material

23

Release Prevention and Response Act, Chapter
21E of the Massachusetts General Laws) on the
Premises.

LESSOR covenants and warrants to LESSEE that
it has full right and lawful authority to
enter into this Lease for the term of this
Lease, or any renewal, extension or option
hereof; that LESSOR is or has the legal right to
become lawfully seized of the Premises and has
or will have good and marketable title
thereto, free and clear of all tenancies,
liens, encumbrances, encroachments,
restrictions, conditions, reservations and
easements, except real estate taxes due but
not yet payable, and that the LESSEE shall
and may peacefully and quietly hold and enjoy
the Premises throughout the term hereof
without hindrance By the LESSOR or any other
person claiming through or under the LESSOR,
except for mortgages of record.

The LESSOR will keep the floors, foundations,
external walls, structural members, roofs,
non-laboratory plumbing, electric wires and all
utility conduits and appurtenances thereto
located in the Building in good working order,
condition and repair, reasonable wear and tear
excepted, and will make all repairs to the
boiler and the heat, ventilation and air
conditioning system; and provided, further, that
notwithstanding anything to the contrary set
forth in this Lease, LESSOR agrees, at its
cost and expense, to make any repairs or
maintenance required to the Premises or any

24

systems or facilities thereof, as to which
LESSEE notifies LESSOR within 6 months following
the Rent Commencement Date.

23.    BROKERAGE    LESSOR and LESSEE represent that neither was
introduced to this Lease opportunity by any
broker.

24.    SELF-HELP    If LESSOR shall default in the performance or
observance of any agreement or condition in
this Lease contained on its part to be
performed or observed, or shall default in
the payment of any tax or other charge which
shall be a lien upon the Premises; and if
LESSOR shall not cure such default within
thirty (30) days after notice from LESSEE
specifying the default (or shall not within
said period commence to cure such default and
thereafter prosecute the curing of such
default to completion with due diligence),
LESSEE, may, at its option, without waiving
any claim for damages, at any time thereafter
cure such default for the account of LESSOR,
LESSEE in so doing shall be deemed paid or
incurred for the account of LESSOR and LESSOR
agrees to reimburse LESSEE therefor or save
LESSEE harmless therefrom, provided that
LESSEE may cure any such default as aforesaid
prior to the expiration of said waiting
period (but after said notice to LESSOR) if
the curing of such default prior to the
expiration of said waiting period is
reasonably necessary to protect the Building
or the Premises or LESSEE'S interest therein
or to prevent injury or damage to persons or

25

property.  If LESSOR shall fail to reimburse
LESSEE upon demand for any amount paid for
the account of LESSOR hereunder, LESSEE shall
have the right to commence an action against
the LESSOR for said amount and/or to set-off
and apply said amount, after notice of an
intent to do so, against the installments of
rent or any other amounts due or to become
due to LESSOR from LESSEE under this Lease.

25.  NOTICE OF     The parties shall execute and cause to be
     LEASE         recorded a Notice of Lease in accordance with
                   the requirements of G.L. c.183, §4.

26.  ENTIRE        This Lease contains the entire agreement
     AGREEMENT     between the parties and all prior
                   negotiations and agreements are merged
                   herein.  Neither LESSOR nor LESSOR'S agent or
                   representative has made any representation,or
                   statement, or promise upon which LESSEE has
                   relied regarding any matter or thing relating
                   to the Building, the land allocated to it,
                   (including the parking area) or the Premises,
                   or any other matter whatsoever, except as is
                   expressly set forth in this Lease, including,
                   but without limiting the generality of the
                   foregoing, any statement, representation or
                   promise as to the fitness of the Premises for
                   any particular use, the services to be
                   rendered to the Premises or the prospective
                   amount of any item of additional rent.  No
                   rights, easements or licenses are or shall be
                   acquired by LESSEE by implication or
                   otherwise unless expressly set forth in this
                   Lease.  This Lease may not be changed,

26

modified or discharged, in whole or in part,
orally, and no executory agreement shall be
effective to change, modify or discharge, in
whole or in part, this Lease or any
obligations under this Lease, unless such
agreement is set forth in a written
instrument executed by LESSOR and LESSEE.

IN WITNESS WHEREOF, the LESSOR and LESSEE have hereunto set
their hands and common seals this 31st day of August, 1994.

Eleven Hurley Street Associates, LESSOR

By _____
Varney J. Hintlian, General Partner

By _____
Frederick J. Hintlian, General Partner


Biopure Corporation, General Partner

By _____
Carl W. Rausch, Chairman


Biopure Corporation, LESSEE

By _____
Brian Lajoie, Vice President, Finance

27

# FIRST AMENDMENT TO LEASE

This First Amendment to Lease (this "Amendment"), dated as of December 29, 1995. is by and between Eleven Hurley Street Associates, a Massachusetts general partnership ("LESSOR"), and Biopure Corporation, a Delaware corporation ("LESSEE").

WHEREAS, LESSOR and LESSEE are parties to a certain Commercial Lease dated August 29, 1994 (the "Lease"), covering the premises located at 11 Hurley Street, Cambridge, Massachusetts; and

WHEREAS, LESSOR and LESSEE desire to amend certain of the terms and provisions of the Lease as hereinafter set forth;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the LESSOR and LESSEE hereby agree as follows:

1.    Paragraph 2 of the Lease is hereby amended by deleting said paragraph in its entirety and substituting therefor the following new paragraph 2:

"2.    TERM.    The initial term of this Lease shall be for one hundred fifty-two (152) months commencing on May 1, 1995 and ending on December 31, 2007.  If Lessee shall not be in default hereunder at the time a notice of extension described in this Paragraph 2 is given, or at the expiration of the initial term or the five (5) year extension period during which such notice is given, the LESSEE shall have the option to extend the term of this Lease for ten (10) successive periods of five (5) years each, the first such extension period to commence on January 1, 2008, on the terms set forth herein by giving LESSOR written notice of the exercise of this option to extend not less than six (6) months prior to expiration of the initial term or the expiration of the five (5) year extension period then in effect, as the case may be.

As used herein, the word "Term" shall mean the initial term of this Lease and each five (5) year extension period to the extent that the option to extend for such five (5) year term extension period shall have been exercised pursuant to this Paragraph 2 and such extension shall have become effective, and the term "Termination Date" shall mean the date upon which the Term terminates.

BOS-BUS:278080.1

-2-

2.    Paragraph 3 of the Lease is hereby amended by deleting said Paragraph in its entirety and substituting therefor the following new paragraph 3:

3.    RENT.

A.    The rent payable to LESSOR during the initial term shall be as follows:

| Lease Year | P.S.F. | Annually | Monthly |
|---|---|---|---|
| 5/1/95 - 12/31/95 | $9.25 | $220,612.50 | $18,384.37 |
| 1996 | $10.00 | $238,500.00 | $19,875.00 |
| 1997 | $10.00 | $238,500.00 | $19,875.00 |
| 1998 | $10.00 | $238,500.00 | $19,875.00 |
| 1999 | $10.00 | $238,500.00 | $19,875.00 |
| 2000 | $10.00 | $238,500.00 | $19,875.00 |
| 2001 | $10.00 | $238,500.00 | $19,875.00 |
| 2002 | $10.00 | $238,500.00 | $19,875.00 |
| 2003 | $11.00 | $262,350.00 | $21,862.50 |
| 2004 | $11.00 | $262,350.00 | $21,862.50 |
| 2005 | $11.00 | $262,350.00 | $21,862.50 |
| 2006 | $11.00 | $262,350.00 | $21,862.50 |
| 2007 | $11.00 | $262,350.00 | $21,862.50 |

B.    The annual rent payable to LESSOR during each five (5) year extension period shall be the annual rent payable during the lease year immediately preceding the date upon which such extension period commences (the "Extension Period Commencement Date") increased by an amount which is the product of (a) a percentage equal to the greater of the percentage increase in the Price Index (as defined below) over the five (5) lease years immediately preceding the Extension Period Commencement Date and 15.9%, and (b) the annual rent payable during the lease year immediately preceding the Extension Period Commencement Date.

As used herein, the term "Price Index" means the Consumer Price Index for All Urban Consumers (CPI-U), for the Boston, Massachusetts Area, All Items (1982-84 = 100), published by the Bureau of Labor Statistics, U.S. Department of Labor, and if such Price Index shall be discontinued or revised then the parties shall agree to the use of a substitute index that reasonably reflects price increases for the Boston area.    The Price Index number for any month relevant to any determination under this Lease shall be that published by the Bureau of

BOS-BUS:226080.1

FEB-09-2004 TUE 05:42 PM BIGPURE                    FAX NO. 10723466850            P. 04

-3-

Labor Statistics for such month, if a Price Index number is available for such month, otherwise for the most recent preceding month as to which the determination is to be made.

C.    The Premises are leased to the LESSEE on an absolute net basis. The term absolute net shall mean that the LESSEE shall, in addition to the monthly rental payments to the LESSOR, be responsible for the payment of real estate taxes, insurance premiums, utilities and normal maintenance to the building operating systems and equipment including, but not limited to, the heating plant and air conditioning systems.

D.    The LESSEE agrees to pay to the LESSOR on May 1, 1995 and, thereafter, monthly in equal installments, in advance, on the first day of each and every calendar month during the Term of this Lease, a sum equal to one-twelfth of the annual rent applicable to the then current lease year or portion thereof. In the event the rent is not paid by the 10th day of the month for which it is due, LESSEE agrees to pay a penalty charge of three (3%) percent of the rent due. This shall also apply for any dishonored check which results in the failure of LESSOR to receive rent by the 10th day of the month for which rent is due. In the event LESSEE makes three (3) or more consecutive late payments of rent during the Term, LESSOR may deem such action a default under Paragraph 19 hereof. If, because of LESSEE's default under any covenant of this Lease, including the non-payment of rent, LESSOR institutes an action for summary proceedings against LESSEE and obtains a judgment against LESSEE, LESSEE agrees to reimburse the LESSOR for the expense of reasonable attorney's fees plus costs and disbursements and the same shall be included in such judgment as additional rent.

4.    The LESSOR and LESSEE confirm that the "Rent Commencement Date", as defined in Paragraph 4 A. of the Lease, is May 1, 1995.

5.    The terms and provisions of the Lease are hereby ratified and confirmed.

BOS-BUS:223080.1

-4-

G.   This Amendment shall be binding upon the parties and upon their respective successors and assigns.

LESSOR:   ELEVEN HURLEY STREET
          ASSOCIATES

By: _____
    Varney Hintlian,
    General Partner

By: _____
    Frederick J. Hintlian,
    General Partner

By: Biopure Corporation,
    General Partner

    By: _____
        Brian Lajoie
        Vice President-Finance


LESSEE:   BIOPURE CORPORATION


_____
Brian Lajoie
Vice President-Finance


OPK
Biotech

March 28, 2012

Eleven Hurley Street Associates
11 Hurley Street
Cambridge, MA  02141

Re:    <u>Lease of Space at 11 Hurley Street, Cambridge, MA, dated August 29, 1994 (the "Lease")</u>

Dear Sir or Madam,

Pursuant to Section 2 of the Lease, as amended by the 1st Amendment to the Lease, the undersigned OPK Biotech LLC (successor in interest to Biopure Corporation as Lessee under the Lease) hereby exercises its option to extend the term of the Lease as provided therein.

The extension covers the five (5) year period from January 1, 2013, to December 31, 2017.

If you have any questions, please contact me at your convenience.

Sincerely,

OPK BIOTECH LLC

By: _____
Ted LaBelle  -  Vice President – Finance

APPROVED:

_____
Gerald Kowalski – Chief Executive Officer

cc    <u>Via E-Mail:</u> Varney J. Hintlian, Frederick J. Hintlian, Edward Lonergan, Esq., Vern
      Brown, Ted LaBelle f/b/o Delare LLC, Zaf Zafirelis, Douglas Rosner, Michael Moran

*OPK Biotech LLC, 11 Hurley Street Cambridge MA 02141 USA*

GSDOCS\2134483.1

# EXHIBIT

# B

| **JUDGMENT FOR PLAINTIFF(S) FOR POSSESSION AND RENT** | DOCKET NUMBER<br>**1452SU000139** | **Trial Court of Massachusetts**<br>**District Court Department**<br>Summary Process Session |
|---|---|---|

Eleven Hurley Street Associates v. OPK Biotech, LLC

SUBJECT PREMISES
11 Hurley Street , Cambridge, MA 02141

| PLAINTIFF(S) WHO ARE PARTIES TO THIS JUDGMENT<br>Eleven Hurley Street Associates | COURT NAME & ADDRESS<br>Cambridge District Court<br>4040 Mystic Valley Parkway<br>Medford, MA 02155 |
|---|---|
| DEFENDANT(S) WHO ARE PARTIES TO THIS JUDGMENT<br>OPK Biotech, LLC | NEXT COURT EVENT (IF ANY)<br>**No Future Event Scheduled** |
| ATTORNEY (OR PRO SE PARTY) TO WHOM THIS COPY OF JUDGMENT IS ISSUED<br>Leonard A. Frisoli, Esq.<br>Frisoli Associates PC<br>43 Thorndike Street<br>Cambridge, MA 02141 | FURTHER ORDERS OF THE COURT |

### JUDGMENT FOR PLAINTIFF(S) FOR POSSESSION AND RENT

On the above action , after defendant(s) failed to appear, the issues having been duly tried or heard, and a finding or verdict having been duly rendered, IT IS ORDERED AND ADJUDGED by the Court (Hon. Severlin B Singleton ) that the plaintiff(s) named above recover of the Defendant(s) named above possession of the subject premises shown above and, for unpaid rent, use and occupation, the "Judgment Total" shown below plus other costs as may be taxed pursuant to law, with postjudgment interest thereon pursuant to G.L. c. 235, § 8 at the "Annual Interest Rate" shown below from the "Date Judgment Entered" shown below until the date of payment.

### NOTICE OF ENTRY OF JUDGMENT

Pursuant to Mass. R. Civ. P. 54, 58, 77(d) and 79(a) and Uniform Summary Process Rule 10(d),  this Judgment has been entered on the docket on the "Date Judgment Entered" shown below, and this notice is being sent to all parties.

| | |
|---|---|
| 1.  Date of Breach, Demand or Complaint | 02/28/2014 |
| 2.  Date Judgment Entered | 03/21/2014 |
| 3.  Number of Days of Prejudgment Interest *(line 2 - Line1)* | 21 |
| 4.  Annual Interest Rate of 0.12/365.25 = Daily Interest rate | .000329 |
| 5.  Single Damages | $ |
| 6.  Prejudgment Interest   *(lines 3x4x5)* | $ |
| 7.  Double or Treble Damages Awarded by Court *(where authorized by law)* | $ |
| 8.  Costs Awarded by Court | $252.00 |
| 9.  Attorney Fees Awarded by Court *(where authorized by law)* | $ |
| 10. **JUDGMENT TOTAL PAYABLE TO PLAINTIFF(S)**<br>    *(Lines 5+6+7+8+9)* | $252.00 |

| DATE JUDGMENT ENTERED<br><br>03/21/2014 | CLERK-MAGISTRATE/ASST. CLERK<br><br>X |
|---|---|

# EXHIBIT
# C

| EXECUTION FOR POSSESSION OF NON-RESIDENTIAL PROPERTY | DOCKET NUMBER 1452SU000139 | Trial Court of Massachusetts District Court Department Summary Process Session |
|---|---|---|

CASE NAME
Eleven Hurley Street Associates v. OPK Biotech, LLC

| DEFENDANT AGAINST WHOM EXECUTION IS ISSUED | COURT NAME & ADDRESS |
|---|---|
| OPK Biotech, LLC 11 Hurley Street Cambridge, MA 02141 | Cambridge District Court 4040 Mystic Valley Parkway Medford, MA 02155 |

DATE OF JUDGMENT
03/21/2014

PLAINTIFF(S) IN WHOSE FAVOR EXECUTION IS ISSUED
Eleven Hurley Street Associates

PLAINTIFF (OR PLAINTIFF(S) ATTORNEY) WHO MUST ARRANGE SERVICE OF EXECUTION
Leonard A. Frisoli, Esq.
Frisoli Associates PC
43 Thorndike Street
Cambridge, MA 02141

FURTHER ORDERS OF THE COURT

LOCATION OF NON-RESIDENTIAL SUBJECT PREMISES
11 Hurley Street , Cambridge, MA 02141

**TO THE SHERIFFS OF THE SEVERAL COUNTIES OR THEIR DEPUTIES, OR ANY CONSTABLE OF ANY CITY OR TOWN WITHIN THE COMMONWEALTH:**

The plaintiff(s) named above has recovered judgment against the defendant(s) named above for possession of the non-residential subject premises shown above.

**WE COMMAND YOU,** therefore, to cause the plaintiff(s) to have possession of the subject premises shown above without delay.

This execution is valid for twenty years from the date of judgment indicated above. It must be returned to the clerk-magistrate's office of this court, along with your return of service, within ten days after this judgment for possession has been satisfied or discharged, or after twenty years if this judgment remains unsatisfied or undischarged.

| TESTE OF FIRST JUSTICE WITNESS: Hon. Roanne Sragow-Licht | DATE EXECUTION ISSUED 04/01/2014 | CLERK-MAGISTRATE/ASST. CLERK X _[signature]_ |
|---|---|---|

**RETURN OF SERVICE**

☐ Pursuant to this writ, I have caused the plaintiff(s) to have possession of the subject premises.

   ☐ After notice the defendant(s) vacated the subject premises voluntarily.

   ☐ I have physically removed the defendant(s) and his/her/their personal possessions from the subject premises.

☐ I have not caused the plaintiff(s) to recover possession of these premises pursuant to this writ because:

| DATE & TIME WRIT SERVED | DATE OF RETURN | CONSTABLE/DEPUTY SHERIFF X |
|---|---|---|